## TAYLOR v. FRAM et al.

### (District Court, E. D. New York. June 18, 1917.)

1. BAILMENT ⟨⟩21—SENDING GOODS ON CONSIGNMENT—RIGHTS OF THIRD PERSONS.

Where goods are sent to a dealer under a consignment, if title is to be reserved in the consignor, the goods should be so marked or identified, or of such a character as not to deceive innocent parties dealing with the consignee upon the strength of his having such goods as a part of his ordinary stock.

2. BANKRUPTCY ⟨⟩140(3)—RIGHTS AS TO PROPERTY SENT BANKRUPT ON CONSIGNMENT.

Where goods are sent a dealer on consignment, and title is reserved, goods which can be identified, and as to which passing of title has not occurred, remain the property of the consignor as between him and the consignee, and the creditors and trustee in bankruptcy of the consignee have no better title than the consignee.

3. BANKRUPTCY ⟨⟩140(3)—RIGHTS AS TO PROPERTY SENT BANKRUPT ON CONSIGNMENT.

Where a bankrupt was furnished by defendants, a wholesale firm, consisting of his brother and brothers-in-law, with goods on consignment, to be sold at not less than the invoice price and accounted for weekly, but the goods were billed as if purchased, and not marked so as to indicate to the public that they belonged to defendants, and to defendants' knowledge the bankrupt handled the goods as if purchased from any jobber, and did not comply with the contract as to accounting for the proceeds, defendants *held* not entitled to goods retaken by them shortly before bankruptcy as against the trustee, because the facts showed fraud in the original contract, and because defendants had so acted as to estop them-

selves from claiming the goods, and because such a breach in the contract as to indicate that the consignee was not carrying out the contract of agency had been condoned.

4. BANKRUPTCY ⊙⟶287(3)—SUITS BY TRUSTEE—FORM.

Bankr. Act July 1, 1898, c. 541, § 2, subd. 7, 30 Stat. 545, as amended by Act June 25, 1910, c. 412, § 2, 36 Stat. 838 (Comp. St. 1916, § 9586), provides that courts of bankruptcy shall have jurisdiction to cause the estates of bankrupts to be collected, reduced to money, and distributed, and to determine controversies in relation thereto. Section 23b, as amended by Act June 25, 1910, c. 412, § 7, 36 Stat. 840 (Comp. St., 1916, § 9607), provides that suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt might have brought or prosecuted them, except suits for the recovery of property under certain sections. *Held* that, where a trustee filed a complaint in the form of a bill in equity to have a consignment agreement under which the defendant furnished the bankrupt goods held fraudulent and void, and to declare the defendants trustees for goods returned to them shortly before bankruptcy, and to have defendants directed to deliver the goods or their value to the trustee, an objection to the form of the suit could not be sustained, though it was not necessary to set aside the consignment agreement, and an action at law to recover a preferential payment was the real purpose of the action, since the action amounted to no more than the exercise of the equitable jurisdiction given the bankruptcy court to recover assets of the estate, especially in view of Act March 3, 1915, c. 90, 38 Stat. 956 (Comp. St. 1916, §§ 1251a–1251c), providing that, when a suit at law should have been brought in equity or a suit in equity at law, the court shall order any necessary amendment, and that any party shall have the right at any stage of the action to amend so as to obviate the objection that the suit was not brought on the right side of the court.

Suit by Louis M. Taylor, as trustee in bankruptcy of Charles Epstein, bankrupt, against Isidor Fram and others. Decree for plaintiff.

Samuel J. Rawak, of New York City, for plaintiff.
L. & M. Blumberg, of Brooklyn, for defendants.

CHATFIELD, District Judge. The bankrupt ran a shoe store near the wholesale store of a firm in which his brother was a partner. Being in debt to this firm, he made a contract like that approved in Ludvigh v. Am. Woolen Co., 231 U. S. 522, 34 Sup. Ct. 161, 58 L. Ed. 345, under which he was to receive goods on consignment, sell them at not less than invoice price, and account weekly for those sold. The goods which he ordered were billed as if purchased. His stock gradually increased, and he did not sell or did not account for all the goods which had been delivered to him. A month before bankruptcy he gave a statement, in which he included all these goods in his stock, which he valued at $1,500, and in which he said nothing about consigned goods. At about the same time the defendants refused to let the bankrupt have any more goods, and began an investigation which resulted in an examination of his stock a day or two before he went to the defendants' attorneys and made an assignment under the state law for the benefit of his creditors. On the morning upon which this assignment was made, by defendants' orders, he put into cases and shipped by a moving van, to a store in Manhattan then in the possession of the defendants, goods

which were checked up by a clerk of the defendants, to the value at cost price of $429.73. The bankrupt is also shown by the testimony to have placed a cash register in this van, but there is no evidence that it was ever received by the defendants, and its whereabouts have not been proven.

It appears that, when the agreement to receive goods on consignment was made, the bankrupt owed the defendants the sum of $331.30, and also $100 to the wife of one of the defendants. When the defendants delivered the last item of goods, on the 13th of November, 1915, he had received an additional amount of $1,432.76, and had been credited, in money and merchandise, with the sum of $968.80, which included the sum of $100 repaid for the loan above mentioned. The books show that, when the so-called consignment agreement was made, no change was made in the method of entering items in the ledger, but the account was carried along until the 1st of September, 1916, when a different person seems to have begun making the entries. The old totals were then stricken out, and the account balanced in red ink, in the new handwriting, as of the date of the consignment agreement. No change, however, in the general style of bookkeeping, was made and the defendants continued to credit returns and payments to the general account, without any attempt to keep track, in the ledger, of any particular consignment, or the return of the merchandise included therein. The figures of the books show $431.30 due upon May 25, 1915, and an additional amount of $1,432.76 due November 13, 1915, making a total of $1,864.06. The credits by merchandise and money amounted to $968.80 up to December 11, 1915, and $429.73 in merchandise returned on the morning upon which the assignment was made, total $1,398.53, of which $100 went to the repayment of the loan.

The bankrupt testifies that he never made a return showing what consigned goods he had sold or how much of the consignment he still had on hand. He also testifies that he did not return the cost price for all the sales made, and the figures show that his total indebtedness increased from May to December, by the sum of $134.23. The defendants never demanded from the bankrupt a statement of what he had on hand or of what he had sold. One defendant was the bankrupt's brother and the other two are his brothers-in-law. They made no attempt to collect the previous indebtedness, and evidently had knowledge of his financial condition when he made the assignment. Their own counsel acted as his attorney in so doing. The $100 repaid on the previous loan was credited to the account for consigned goods, and when the shoes from the stock were returned to the defendants they totaled substantially one-third of all the goods delivered to the bankrupt between May and December; but the defendants had never questioned him, nor obtained a statement from him as to the so-called consigned goods which remained in his hands until it was evident that he was insolvent.

[1] It appears that the goods received from the defendants were marked, either by their clerk or by the bankrupt himself, with letters showing the cost price to him and by the initials in ink, "B. S. M.," the initials of the Boston Shoe Market, under which name the defend-

ants did business. The shoes in the bankrupt's stock came from various manufacturers, and were still in the boxes of those manufacturers, but were in no way labeled so that those dealing with the bankrupt could learn, upon ordinary inquiry or inspection, that they were the stock of the Boston Shoe Market. If goods were sent to a dealer under a consignment, and if title is to be reserved in the consignor, the goods should be so marked or identified, or of such character that they would not deceive innocent parties dealing with the consignee upon the strength of his having these goods as a part of his ordinary stock.

[2] As between the bankrupt and the consignor, all goods which can be identified, and as to which passing of title had not occurred, would still be property of the consignor. The creditors of the bankrupt and the trustee in bankruptcy would get no better title than the bankrupt himself. The decision of Ludvigh v. Am. Woolen Co., supra, is to the effect that the bankrupt cannot defeat a claim of title, even by fraudulent acts on his own part with respect to the consigned goods, unless the consignor has so acted with respect to the goods as to enable the bankrupt to hold them out to persons dealing with the bankrupt and using proper care in so doing, and which persons were injuriously affected through those acts and conditions which the consignors might have reasonably expected would follow from their own methods in putting out the goods or in dealing with the bankrupt. In the present case, the balance of the stock was estimated by a dealer at $543.21. It was sold at auction for $299.84, and appraised at approximately the same amount.

Taking the bankrupt's own figures in his statement to creditors, the trustee has charged that the defendants removed at least $1,000 worth of goods; but the testimony is clear to the extent of showing that the wholesale price of the goods returned to the defendants was $429.73. As these goods were taken back by them at that valuation, their market value to the defendants was evidently that much. If an execution had been levied against the bankrupt, and the goods returned to the defendants had been seized under the execution, the bankrupt would have had no title, and the levying creditor would succeed only to his rights. If solvent, the defendants would have been able to compel the sheriff to leave in the hands of the bankrupt those goods which they could show had come from them and were held by the bankrupt under the consignment agreement. But if the bankrupt were insolvent, and if the sheriff had levied upon these goods, the alleged consignors could not obtain the goods, if it could be shown that they had been guilty of an act which would indicate the passing of title, or the assumption of the relation of creditor and debtor, between the alleged consignor and the bankrupt.

[3] The bankrupt in the present case did not advertise himself as an agent, nor have any sign to show that he was selling goods on consignment, and the exact way in which he was doing business was known to all three of the defendants. He had nothing in his store, and the goods sent by the defendants to him had no marks in any way to indicate that they were the Boston Shoe Market's stock, beyond the identification letters, which would not inform other parties that the shoes had not been purchased in the ordinary way. They were aware that the bank-

rupt was thus holding out these goods to those dealing with him as if purchased from any jobber, instead of obtained from them as consignor reserving title. No conditional bill of sale was made or filed, and the relation of debtor and creditor would be indicated from everything concerned with the transaction, even including the memoranda of sales which went with the goods and which were nothing more than bills. The defendants must have known when they examined the books, and certainly in September, when the change was made in the method of keeping books, that the bankrupt was not reporting to them weekly, and that he was already breaking his agreement to hold the goods as agent for the defendants. Such a contract must be lived up to strictly. If variations therefrom are sufficient to indicate a breach or deviation from the terms of the contract, and possible deception or fraudulent dealing with third parties, by the one who is evading or failing to comply with the terms of the contract, then certainly those creditors who have been deceived or misled can claim estoppel, and the trustee in bankruptcy, although standing in the shoes of the bankrupt, can attack the so-called consignment agreement, and can take advantage of the rights of those creditors who, if they had themselves levied execution, would be able to enforce the estoppel just referred to. A transaction which is in form and effect, so far as the public is concerned, a sale, but which the apparent vendor alleges to be, not a sale, but a bailment, will be treated and considered as passing title to the goods in question to the bankrupt: (1) If fraud is shown in the original contract of agency; (2) if the parties to the contract have so acted as to estop themselves from denying the legal effect of acts which they are seeking to explain, and which tend to accomplish what would cause a fraudulent result; (3) where there has been a breach in the contract sufficient to indicate that the consignee was not carrying out the contract of agency, and where the consignor has then so acted upon the breach as to show, with respect to future consignments, that title passed in the transactions and that they were sales, instead of bailments.

The present case comes within all three of these categories. There is sufficient evidence to indicate the lack of good faith in the making of the original contract, inasmuch as the methods under which the contract was to be carried out would almost certainly insure fraudulent results to the public, and the previous dealings of the bankrupt with the defendants did not indicate any intent on his part to honestly act as an agent. He immediately began that course which was to have been expected. He failed to live up to his contract of agency, and throughout acted as a purchaser of those goods which were sent to him as if sold. The existence of the paper agreement was not sufficient to rebut the evidence furnished by the acts of the parties themselves. The defendants are plainly estopped from denying the consequences of their acts to those who were misled by the bankrupt through the course pursued by the defendants. The greater part of the transactions shown were also after evident failure of the bankrupt to live up to his contract, and would thus fall within the last class of acts above referred to, viz., those in which the elements of a sale were present because of the failure to carry out the agreement to act as agent.

243 F.—47

For all the reasons, therefore, the plaintiff should recover from the defendants the market value which has been shown of the goods which evidently were received by the defendants after the assignment and when the defendants knew that the bankrupt was in financial difficulties.

[4] The complaint is in the form of a bill in equity to have the consignment agreement held fraudulent and void and to declare the defendants trustees for the merchandise received by them. The plaintiff asked that they be directed to deliver it or its value to him as trustee in bankruptcy. It became evident upon the trial that the defendants were creditors and that their taking of the goods, under the circumstances, was in that sense a preferential transfer. The case of Dean v. Davis, 37 Sup. Ct. 130, decided in the Supreme Court of the United States upon the 8th day of January, 1917, holds that a preferential payment to a creditor may be found void for fraud and for an attempt at concealment of assets of the bankrupt. The present case is similar to this, in that there was no need of a bill in equity to declare the consignment agreement void and for an accounting. An action at law to recover a preferential payment, or to obtain the value of goods secured by fraud, was the real purpose of the action. A summary proceeding would have accomplished the result, unless the defendants objected to the jurisdiction of the court, upon making a claim of title.

But an action in the form of a bill in equity cannot be objected to if it amounts to no more than the exercise of that equitable jurisdiction which is given to the bankruptcy court for the recovery of assets belonging to the bankrupt estate or for the administration of property in the hands of the court, as a part of the estate. The present action is thus brought in a form which, under section 2, subd. 7, and section 23, subd. b, as amended, of the bankruptcy statute, is within the jurisdiction of this court. No objection to jurisdiction has been made, and no question was raised as to the form of the action until the close of the case, when the defendants sought to show a variance in the proof, and thus to object to the jurisdiction of the court over that cause of action which is for the recovery of a sum of money only, which now is asked by the plaintiff. As a matter of fact the accounting prayed for has actually been had during the course of the trial. A decree directing the payment of the sum of money referred to would be possible as a part of strictly equitable relief, and the action has involved the setting aside and declaring void the written instrument which would have been urged as a defense if an action for recovery of the money only had been instituted. Act March 3, 1915, c. 90, 38 Statutes at Large, p. 956 (Comp. St. 1916, §§ 1251a–1251c), substantially disposes of the objection, however, and the relief, to the extent of directing payment by the defendants of the sum of $429.73, will be directed.