**YARM et al. v. LIEBERMAN.**
No. E–5012.

District Court, E. D. New York.
Jan. 8, 1931.

Herman G. Robbins, of Brooklyn, N. Y., for plaintiff.

Maurice Holden, of Brooklyn, N. Y., for defendant.

BYERS, District Judge.

The trustee in bankruptcy above-named brings this action in equity for a decree and judgment declaring the payment and transfer of property to the defendant during the early days of January, 1930, to be preferential, fraudulent, and void; judgment being sought against the defendant in the sum of $1,500 with interest from the date of the transfer.

The bankrupts Snyder and Harris were partners, conducting a retail clothing business at No. 721 Broadway, in the borough of Brooklyn within the Eastern district, and Harris testifies that the partnership came into existence as of August 1, 1929.

Under date of August 15, 1929, an agreement, constituting Plaintiff's Exhibit 2, was made between American Clothing Company and "Model Clothes, having their principal place of business at 721 Broadway, in the Borough of Brooklyn," etc., which was signed by Harry Snyder.

Harris testifies that he knew nothing of the contract, but, as the partnership was in existence and this contract may be assumed to have been within the apparent purposes of the partnership, the decision herein to be made will proceed upon the theory that it was a partnership contract.

It recites that the American Clothing Company is a manufacturer of men's clothing, and that the party of the second part "is conducting a retail clothing store of men's clothing at 721 Broadway, in the Borough of Brooklyn, City of New York, and is desirous of obtaining men's clothing on consignment from the party of the first part, which is to be sold at retail on the premises at 721 Broadway, Brooklyn, New York, for the account of the party of the first part," etc., and continues:

1. All the men's clothing belonging to the American Clothing Company which the dealer is to sell at retail is to be sold at a reasonable profit above the list price, "which price shall be governed by the figures charged on the invoices" of the manufacturer.

2. Title to the men's clothing, while on the premises of the dealer, shall remain in the manufacturer until sold, and during that time the status of the second party is that of an agent only.

3. The manufacturer is not to be responsible for any of the expenses of the dealer, including rent, clerk hire, etc., which is the reason why the dealer is to receive the entire profit over the list price of the various items.

4. The manufacturer "is to receive payment for the men's clothing sold by the party of the second part every Monday morning for merchandise sold from Monday morning until Saturday night of each week, it being understood that all such moneys accumulated shall be held in trust for the party of the first part, by the party of the second part until the party of the first part calls for it."

5. "It is distinctly understood and agreed that the party of the second part shall not make use of or expend any of the said moneys while holding the same in trust for the party of the first part."

6. "It is further agreed that the party of the second part agrees to secure all the merchandise shipped by the party of the first part, under the terms of this agreement against loss by fire, theft or otherwise and agree to secure insurance towards that end, holding himself (sic) responsible to the party of the first part for such losses."

7. The manufacturer has the right to terminate the contract at any time.

8. In the event of the termination, it shall be lawful for the manufacturer, who is so authorized by the retail dealer, "with the aid and assistance of any person or persons to enter the said store operated by the party of the second part, and take and carry out all of the remaining merchandise delivered by the party of the first part, to the party of the second part on consignment under the terms of this agreement."

The presently material provisions of the contract have been quoted, and the others have been sufficiently indicated. Lieberman and American Clothing Company are treated as identical.

According to a statement bearing date June 16, 1930, about five months after the

bankruptcy, and prepared by the manufacturer, the dealings of the parties started August 20, 1929, and continued until January 3, 1930. During that period of time, about 113 suits and some extra pairs of trousers were delivered to the bankrupts, and six payments were made, beginning October 19th and ending December 24th, and in each instance the check was for a certain number of suits at the invoice price of $17.75, but there is no way of proving, nor does the evidence attempt to show, that suits were paid for in accordance with the terms of the contract, i. e., on the Monday following the week during which sales were made.

Even though it be assumed, without· so deciding, that the parties had in mind a consignment contract which would be fairly comparable to that discussed in Ludvigh v. American Woolen Co. of New York et al., 231 U. S. 522, 34 S. Ct. 161, 58 L. Ed. 345, it is apparent that that intention was abandoned in the following respects:

The proceeds of such sales of the clothing as were made by the bankrupts were not held in trust for the manufacturer; nor is there any reason to suppose, from the evidence adduced at the trial, that such proceeds were not commingled with the ordinary funds of the bankrupts and used by them in and about the transaction of their affairs; again, it is distinctly shown that there was no fire insurance carried for the benefit of the manufacturer as contemplated by the contract.

Also there is no proof whatever that the manufacturer elected to terminate the contract, or gave any notice to that effect whereby its right to remove unsold merchandise would arise in accordance with paragraph 8 of the contract.

There is nothing to show that the merchandise manufactured by the defendant was earmarked, labeled, or identified as the property of the American Clothing Company or of Harry Lieberman, the defendant in this action, and it is quite clear that all persons dealing with the bankrupts and observing this particular merchandise on their shelves or in their store would be justified in believing such merchandise to be the property of the bankrupts.

This defendant took into his custody and removed from the premises of the bankrupts 56 suits, valued at $994, on a day in January, 1930, when other creditors of the bankrupts were present in the store, one of whom was named Whitcup, who also removed merchandise at the same time. The date of that occurrence was January 9, 1930, and, while there is no testimony in this record fixing the date, it is significant that the statement (Plaintiff's Exhibit 1) prepared by the defendant recites the return of merchandise as on January 3, 1930. That is believed to be inaccurate.

The failure of the parties to carry the contract into complete effect is shown by the testimony of the bankrupt Harris, who says, for instance, that this defendant used to call at the place of business of the bankrupts every week or every second week, and that he never demanded payment for goods sold during the prior week; that he always made payment on account; that Lieberman never asserted that the proceeds of sales should be kept in a separate account. Regular invoices or delivery slips were used.

Upon the whole case, it is believed that this contract was entered into solely to provide an excuse for the removal of merchandise in the event that the bankrupts should come to financial difficulties, and that it was not such an open and aboveboard transaction as should be permitted to stand in the face of the rights of creditors who did not resort to such methods in their dealings with the bankrupts.

While the facts are not precisely similar to those discussed in the case of Taylor v. Fram et al. (D. C.) 243 F. 733, which was later affirmed by the Circuit Court of Appeals, 252 F. 465, the reasoning of the latter opinion applies with force to the circumstances here under review. It is not thought that the Matter of Klein (C. C. A.) 3 F.(2d) 375 limits or impairs the effect of Taylor v. Fram et al. The test seems to be, in both cases, whether an agreement, valid in purpose and so recognized by the law, has been carried into effect, in good faith, by the parties. Some of the distinguishing incidents, found in the Klein Case, but absent here, are: Absence of weekly accountings; absence of separate records of the merchandise alleged to have been consigned; absence of invoices containing any reference to the special contract, or other appropriate language; absence of special statements rendered by the bankrupts to the manufacturer; absence of any accounting by the bankrupts.

The features common to the two cases are: Lack of performance of the insurance clause; payment from time to time of amounts covering an exact number of suits; lack of proof that any general creditor extended credit relying upon apparent title in the bankrupts to these particular garments.

Viewing the situation as a whole, it is believed that the equities preponderate in favor of the plaintiff Trustee.

The plaintiff may take a decree directing payment by the defendant of the sum of $994 with interest from January 9, 1930.

Settle decree on two days' notice.