## LIEBOWITZ v. VOIELLO.
### No. 44.

Circuit Court of Appeals, Second Circuit.
Nov. 13, 1939.

Samuel B. Ohlbaum, of New York City, for plaintiff-appellant.

Avel B. Silverman, of New York City, for defendant-respondent.

Before L. HAND, CLARK, and PATTERSON, Circuit Judges.

CLARK, Circuit Judge.

The present case presents another variation of the repeated attempts of creditors to secure insulation from financial loss in continuing business dealings with a failing

concern. The defendant wanted to deliver flour to the bankrupt concern (or those identified with it) for manufacture into macaroni, distribution, and sale; the legal device resorted to was a consignment contract supposed to create only an agency for the processing of the flour and the sale of the completed product. The device was adjudged successful by the District Court, which directed a defendant's verdict when the bankruptcy trustee brought this action for conversion of the bankrupt's assets. We do not believe, however, that under the circumstances the device was sufficiently ingenious to deserve the award of a judicial imprimatur.

The facts as presented to the jury disclose that the defendant, eastern agent of flour companies, had for some years sold flour[1] to the bankrupt corporation. The corporation manufactured the flour into macaroni in its New Jersey factory and then sold it throughout the New York metropolitan area. The officers of the corporation were Peter Cassinelli and Emilio Zuccarini, who, together with their wives, owned all of its capital stock. The bankrupt's finances were never quite healthy, as the defendant well knew. On occasion he had exchanged his own check for that of the corporation, and permitted his own check to be sent to the flour companies in payment for the flour. As the condition of the bankrupt became even more questionable, a plan was worked out and a written agreement prepared with the competent assistance of defendant's lawyer. Under this agreement, defendant was, for his own account, to purchase flour from the companies for which he was agent, and deliver the flour to the individuals Cassinelli and Zuccarini on consignment. They were to convert the raw materials into macaroni and to sell the finished products for the defendant's account. Upon delivery of the flour the individuals were to pay defendant 50 per cent of its value; they were to pay the remainder after the flour was sold, any surplus which they obtained on sale to be their compensation for the processing. By the terms of the contract, the flour and its products were to remain defendant's property; they were to be segregated from other articles on the premises; Cassinelli and Zuccarini were to keep separate inventories ready for defendant's examination; sales accounts were to be kept in separate books; and so on. This agreement was duly signed, with the corporation playing no part therein other than the substantial one of signing (through its president, Cassinelli) an attached guaranty that the individuals would fulfill their obligations under the contract.

In spite of its carefully drawn limitations and restrictions aimed to show a retention of title by the defendant, the validity of this contract, with the corporate guaranty of the individual action, and under all the circumstances, might itself present a problem. But we are not limited to interpretation of an elaborate document, for during the period from the signing of the contract May 15, 1936, until the situation became.hopeless in February, 1937, the parties followed a course of conduct more instructive as to their real intent than any written word could possibly be. True, though Voiello continued to deliver flour to the corporation's factory, he carefully addressed. his invoices to Cassinelli and Zuccarini "personally" and marked each invoice with the notation, "Contract of May 15." But actually things progressed much as before: the flour was manufactured into macaroni on the corporation's premises; when sales were completed, the corporation made entries on its own books; and the proceeds when collected were invariably commingled with other deposits in the corporation's bank account.

As it sank deeper into debt the company received all of its flour from Voiello, whereas previously it had obtained raw materials from many sources. Cassinelli and Zuccarini found themselves unable to make the required 50 per cent cash payment upon delivery of the flour. Accordingly a supplemental agreement was drafted, in the form of a letter, stating that the two individuals would give their personal notes to Voiello as flour was delivered. These notes were to be for the entire purchase price, but the individuals were to be relieved from their obligations thereunder upon sale of the macaroni and remission of the proceeds to Voiello. In practice when collections were made, the corporation wrote its check to the individuals and they in turn endorsed the checks to the defendant to take up their personal notes. On certain occasions, the defendant, in order to avoid dishonor of the notes by the banks to whom he had transferred them, gave his own check to the corporation to take up these notes.

---

[1] Including also Semolina flour, a special type used in the manufacture of macaroni.

By February 11, 1937, when he realized that the situation was beyond repair, defendant removed from the premises some $1,200 worth of flour and $6,000 worth of finished macaroni. He also secured an assignment of the accounts receivable, executed by the bankrupt corporation. He claims that the merchandise and accounts transferred represented flour delivered by him to the individuals Cassinelli and Zuccarini under the written agreement of May 15, 1936. On February 18, 1937, a week after the transfer, the company filed its voluntary petition in bankruptcy in the District Court for the District of New Jersey.

The bulk of the record consists of the testimony of Cassinelli and the defendant, Voiello. Both these witnesses contradicted themselves and each other repeatedly, and it took the combined efforts of opposing counsel and the trial judge to elicit from them even the semblance of an orderly story. At the close of the case, both sides moved for a directed verdict, and the plaintiff also moved that the case be sent to the jury if plaintiff's motion for a directed verdict was denied. The trial court denied plaintiff's motions and granted that of defendant.

■ We think that under the testimony presented, the plaintiff had proven a case strongly indicating that the defendant had conveyed his merchandise to the bankrupt, and that his attempt to reserve an interest therein was in fraud of creditors. Indeed, upon the record made below, the only proper question for the jury was the amount of plaintiff's damages.

■ It is not readily apparent why any consignment arrangement is not a secret lien against creditors of a shaky consignee, as harmful as an unfiled chattel mortgage or conditional sale. But that matter has been settled for us, for the Supreme Court has held that a consignment contract fairly entered into and carried out is valid against a trustee in bankruptcy. Ludvigh v. American Woolen Co., 231 U.S. 522, 34 S.Ct. 161, 58 L.Ed. 345. In that case, however, the Court stressed the good faith of the parties and their adherence to the terms of their bargain. See pages 528-530 of 231 U.S., 34 S.Ct. 161, 58 L.Ed. 345. It is well settled that the real character of the agreement is to be determined from all the circumstances, notably from the conduct of the parties, rather than by express statements of a written contract. Taylor v. Fram, 2 Cir., 252 F. 465.

Hence the conduct of the parties herein is of the utmost importance. True, the claimed arrangement was that the individuals Cassinelli and Zuccarini, not the corporation, were to be the ostensible processers. But in fact the corporation did continue as before to manufacture the macaroni, for its machinery and factory were used for that purpose. Following manufacture, distribution, sale, and even payment took place substantially in accordance with the corporation's previous practice. Under these circumstances the direct interest of the corporation, even beyond its guaranty of performance of the agreement (a strange-enough circumstance if the agreement were bona fide) is apparent, and we cannot respect the asserted anonymity of the corporation in the consignment arrangement.[2]

The consignment document did not really govern the actions of the parties. It is true that on each delivery of flour the defendant made reference on his invoice to the written contract. Further he claims he made periodic visits of inspection, examined the accounts, and identified the flour by the mark "FV" on the bags. But upon each delivery he received notes for the full purchase price. No term of the contract provided that the "consignees" were privileged to return the flour in its native or processed state. Cassinelli and Zuccarini were apparently free to select their own customers for the macaroni that supposedly belonged to Voiello. Nothing in the appearance of the finished and packaged macaroni indicated that it was or ever had been Voiello's property. Purchasers believed they were buying from the Macaroni Company, and their obligations to pay were carried on the corporation's books as the corporation's accounts receivable. And, as stated, payments by purchasers were made to the corporation, and mingled with other funds of the Macaroni Company.

■ We do not see how the behavior of the parties could have been very different had the arrangement been one of outright or conditional sale. It is neither easy nor practical to say where a consignment ends

2 Ludvigh v. American Woolen Co., supra, considered the same problem in reverse. There a partnership was the bankrupt, and the interpolation of a dummy corporation was disregarded.

and a sale begins. In the light of the Ludvigh case, however, there is a line to be drawn. When the rights and duties created by the contract (as actually performed) are substantially the same as the rights and duties that would be created by a sale, the arrangement must be deemed a sale. The asserted intent of the parties that there be a consignment and not a sale cannot prevail when, as here, the rights of creditors intervene.

Under the circumstances, therefore, the device must be considered in fact not a bailment, but a transfer to the bankrupt of an outright interest in the flour. Since there was no recording, it matters little for present purposes whether the transaction be considered an outright sale or something else, such as a conditional sale or a chattel mortgage. Defendant, in his brief, expressly repudiated any claim of conditional sale or chattel mortgage. Numerous cases have held invalid as against a bankruptcy trustee similar courses of dealings, whatever the name they go by.[3] Thus, in Taylor v. Fram, supra, a quite similar case, the transaction was assimilated to a chattel mortgage; in Yarm v. Lieberman, D.C., 46 F.2d 464, to an outright sale (compare also Scott County Milling Co. v. Grayson, 5 Cir., 88 F.2d 190); in In re United States Electrical Supply Co., D.C., 2 F.2d 378, and In re Leflys, 7 Cir., 229 F. 695, to a conditional sale. In re Leflys contains a résumé of indicated badges of fraud to be looked for in determining whether a transaction is in truth a consignment or conditional sale. The similarities are close to the case at bar. Of course, following the Ludvigh case, supra, where the courts have found on all the evidence that there were bona fide consignments, as in In re Klein, 2 Cir., 3 F.2d 375, and Kemp-Booth Co. v. Calvin, 9 Cir., 84 F. 2d 377, the transactions must be sustained. But under the circumstances presented here, the action of the court below in holding that in effect as a matter of law there was a bona fide consignment was error.

The parties were not in agreement as to how to prove the value of the accounts receivable claimed to have been appropriated by the defendant. Should the point become in issue hereinafter, we state that it seems to us incumbent upon the defendant to show a value less than their face if he intends to rely on the point.

The judgment is reversed and the action is remanded for a new trial.

---

[3] The law of New York is claimed to govern, since the contract so provided, but since the transactions were carried out in New Jersey, it may well be that the law of the latter state governs, at least so far as New Jersey creditors are here concerned. Lane v. J. E. Roach's Banda Mexicana Co., 78 N.J.Eq. 439, 444, 79 A. 365, 368. In either case there must be filing as against the trustee in bankruptcy. See N.Y.Personal Property Law (Consol.Laws, c. 41) § 65 (conditional sales), Lien Law (Consol.Laws, c. 33) § 230 (chattel mortgages); cf. § 230-a (chattel mortgages on stock of merchandise); N.J.Rev.Stat.1937, 46:28–5 (chattel mortgages), 46:32–11 (conditional sales), N.J.S.A. 46:28–5, 46:32–11.