In re WINDSOR COMMUNICATIONS GROUP, INC., t/a Norcross-Rust Craft Greeting Card Publishers, Debtor.

WINDSOR COMMUNICATIONS GROUP, INC., t/a Norcross-Rust Craft Greeting Card Publishers, Plaintiff,

v.

FREEDOM GREETING CARD CO., INC., Defendant.

Bankruptcy No. 82–03714K.
Adv. No. 84–0578K.

United States Bankruptcy Court, E.D. Pennsylvania.

March 17, 1986.

See also Bkrtcy., 54 B.R. 844.

---

Douglas J. Smillie, Philadelphia, Pa., for plaintiff.

David Weinstein, Philadelphia, Pa., Colleen Holt, Law Clerk, for defendant.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

In this adversary proceeding, the plaintiff seeks to avoid an alleged preferential transfer pursuant to § 547 of the Bankruptcy Code ("Code"). For the reasons stated herein, we will enter judgment for the plaintiff in the amount of $7,041.28 plus interest.

The facts are as follows:[1]

Windsor Communications Group, Inc. ("Windsor") is the plaintiff in this action. An involuntary petition under Chapter 7 of the Code was filed in this Court against Windsor on August 5, 1982. The case was converted to a case under Chapter 11 on August 25, 1982.

Freedom Greeting Card Company, Inc. ("Freedom") is a manufacturer and supplier of greeting cards. On or about June 19, 1981, Windsor submitted a purchase order for greeting cards. Freedom issued a "Pro Forma Invoice" in the amount of $18,796.60 for the goods ordered. Before the merchandise was shipped, Windsor gave Freedom a note payable on May 7, 1982 in the exact amount of the Pro Forma Invoice. Windsor subsequently replaced that note with one payable on June 10, 1982, also in the amount of $18,796.60. Between March 19, 1982 and April 5, 1982, Freedom shipped merchandise to Windsor with an invoice value of $15,734.84. Prior to the shipments of that merchandise, Windsor owed Freedom $360.49, which when combined with the invoice value of the shipments, created a total accounts receivable balance of $16,095.33 due from Windsor.

On June 7, 1982, Windsor returned a portion of the merchandise to Freedom.

On August 3, 1982, Freedom issued a credit memo (number 1090) in the amount of $7,041.28, in favor of Windsor and reduced its accounts receivable balance by that amount. Freedom's books currently reflect an accounts receivable balance due and owing from Windsor in the amount of $9,054.05.

The value of the greeting cards returned by Windsor to Freedom on June 7, 1985 is $7,041.28.[2]

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157 and the Order of Reference entered by United States District Judge Alfred L. Luongo on January 25, 1985.[3]

The recovery of preferential transfers under the Code is governed by § 547(b), which states:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any *transfer* of *property of the debtor*

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within ninety days before the filing of the petition;....

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (emphasis added). Proper analysis of a preference claim requires consideration of each of the elements set

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Bankruptcy Rules.

2. N.T. at 9.

3. A preference action is a "core" matter pursuant to 28 U.S.C. § 157(b)(2)(F).

forth above. When applied to the facts stated above, it is clear that the transfer of greeting cards from Windsor to Freedom, made within ninety (90) days of the commencement of Windsor's bankruptcy case, constitutes a preferential transfer which may be avoided by Windsor.[4]

Freedom has admitted that Windsor was insolvent on the relevant dates.[5] The other elements of a preferential transfer have also been established. Windsor's obligation to pay for the cards (i.e., the antecedent debt) arose when the cards were received by Windsor. Thus, the transfer was on account of an antecedent debt owed by Windsor before the transfer took place. *See* 11 U.S.C. § 547(b)(2).

The fifth element of a preference is often referred to as the "greater percentage" test. A payment which enables the creditor or "to obtain a greater percentage of his debt than any other of such creditors of the same class" is a preference. *Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936); *Zachman Homes, Inc. v. Oredson* (In re Zachman Homes, Inc.), 40 B.R. 171 (Bankr. D.Minn.1984). The test is met where it is shown that unsecured creditors will receive less than a one hundred percent (100%) recovery on their claims. *Zachman*, 40 B.R. at 174. In this case, unsecured creditors, such as Freedom, will not be paid in full under Windsor's plan of reorganization.[6] Therefore, the debtor has presented satisfactory evidence to the Court that the transfer allowed Freedom to receive more than it would have received if the case were a case under Chapter 7, had the transfer not been made and Freedom received payment on its claim to the extent provided by the provisions of the Code.

The principal argument raised by Freedom in this matter is that the greeting cards returned by Windsor to Freedom on June 7, 1982 were not "property of the debtor" within the meaning of § 547(b) because they were provided to Windsor on a "consignment" or "guaranteed sales" basis.

The applicable provision of the Uniform Commercial Code ("UCC"), as adopted in Pennsylvania, provides in relevant part:

Any retention or reservation by the seller of the title ... in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest.

13 Pa.Cons.Stat.Ann. § 2401(1) (Purdon 1984).

Section 2326 of the Pennsylvania UCC, which defines consignment sales, and establishes the rights of consignors, provides:

(a) Definitions.—Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:

(1) a "sale on approval" if the goods are delivered primarily for use; and

(2) a "sale or return" if the goods are delivered primarily for resale.

(b) Rights of creditors of buyer generally.—Except as provided in subsection (c), goods held on approval are not subject to the claims of the creditors of the buyers until acceptance; goods held on sale or return are subject to such claims while in the possession of the buyer.

(c) Consignment sales.—Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment"

---

**4.** Section 1107(a) of the Code grants the debtor-in-possession all the rights and powers of a trustee appointed in a case under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 1107(a).

**5.** *See* Windsor's Request for Admissions ¶¶ 22 and 23.

**6.** N.T. at 32.

or "on memorandum." However, this subsection is not applicable if the person making delivery:

(1) complies with an applicable law providing for an interest of the consignor or the like to be evidenced by a sign:

(2) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others; or

(3) complies with the filing provisions of Division 9 (relating to secured transactions).

13 Pa.Cons.Stat.Ann. § 2326 (Purdon 1984).[7]

Even though the consignor may reserve certain rights to himself in an underlying agreement, that agreement will not be controlling should the statute apply. *Koenig Incorporated v. Ateco Equipment, Inc.* (In re Ateco Equipment, Inc.), 17 B.R. 230 (Bankr.W.D.Pa.1982).

▆ Here, Freedom has not complied with any of the three (3) exceptions set forth in § 2326. Therefore, the greeting cards which it shipped to Windsor became subject to the claims of Windsor's creditors, including the debtor-in-possession as hypothetical lien creditor.[8]

Although Freedom contends that the greeting cards were shipped to Windsor as either a sale or return (i.e., guaranteed sale) or a consignment sale, Freedom's failure to take any of the steps required by law to perfect its interest in the allegedly consigned goods subjects the value of those goods to recovery for the benefit of the debtor's estate.

Accordingly, we find that Windsor has established all of the elements of a preferential transfer. An appropriate Order follows.

---

**7.** One commentator on the UCC made the following observations about this provision:

> Presumably some lawyers for consignors persist in the erroneous belief that the Code did not alter the rights of consignors. Under pre-Code law, a consignor could generally retrieve the goods against the consignee's creditors (and trustee) even though, as one judge pointed out, a consignor's interest is a "secret lien against creditors ... as harmful as an unfiled chattel mortgage or conditional sale." *Liebowitz v. [Violel-lo] Viodlo,* 107 F.2d 914, 916 (2d Cir.1939). But today Article 9 requires that the consignor file a financing statement for security consignment, and virtually all goods on consignment, whether for security or not, are subject to claims of the consignee's creditors if the consignor did not comply with the public notice requirement of 2–326(3). Thus, the Code draftsmen all but abolished the consignor's "secret lien."

James J. White and Robert S. Summers, Uniform Commercial Code, 765–66 (1st ed. 1972).

**8.** The instant preference action is one claim which the debtor-in-possession may assert pursuant to §§ 544 and 1107 of the Code. Section 544(a)(1) provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of any property of the debtor or any obligation incurred by the Debtor that is voidable by
>
> (1) a creditor who extends credit to the Debtor at the time of the commencement of the case, and that obtains, at such time, and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such creditor exists....

Section 1107 gives the debtor-in-possession all the rights and duties of a trustee under Chapter 11, including the right to set aside an unperfected security interest.