In re MEINHARDT MECHANICAL
SERVICE COMPANY,
INC., Debtor.

Douglas A. CAMPBELL, Trustee for
Meinhardt Mechanical Service
Company, Inc., Plaintiff,

v.

EQUIBANK and William H. and
Josephine Meinhardt,
Defendants.

Bankruptcy No. 81–1175.
Adv. No. 86–87.

United States Bankruptcy Court,
W.D. Pennsylvania.

April 22, 1987.

Jeffrey T. Morris, Plowman & Spiegel, Pittsburgh, Pa., for Mr. & Mrs. Meinhardt.

Douglas A. Campbell, Trustee, David B. Salzman, Campbell & Levine, Pittsburgh, Pa., for trustee.

Peter N. Pross, Kincaid & McGrath, P.C., Pittsburgh, Pa., for Equibank.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is Trustee's Complaint against Equibank and William H. and Jo-

sephine Meinhardt ("Defendants"), alleging several preferential transfers and fraudulent conveyances. Specifically, the Trustee asserts that certain of the monies paid by Debtor to Equibank from May 1, 1980 to January 31, 1981 (ninety days to one year prior to filing), and from January 31, 1981 to May 1, 1981 (within ninety days of filing) constitute preferential transfers pursuant to 11 U.S.C. § 547(b); and that certain of the monies paid by Debtor to Equibank after May 1, 1981 constitute fraudulent conveyances under Pennsylvania law, rendering said transfer avoidable pursuant to 11 U.S.C. § 544(b). Defendants assert that:

1. the Trustee has failed to establish all of the elements of a preferential transfer;

2. payments made for interest accrued are excepted from avoidance as payments in the ordinary course of business;

3. the payments made postpetition were not fraudulent conveyances under Pennsylvania law; and

4. the estate has been made whole by Mr. Meinhardt, making the fraudulent conveyance issue moot.

Based upon the trial Stipulation, testimony offered and briefs submitted to the Court, we find that certain preferential transfers did occur. However, because the Trustee has requested that this Court accept a proposed settlement of one of the preferential transfers, that issue is resolved. We also find that Equibank received a preferential transfer of certain payments made within ninety days, totaling $2,640.69. Additionally, because the estate has been financially restored for the funds paid postpetition, we find that the fraudulent conveyance issue is resolved.

## FACTS

Debtor executed six (6) promissory notes in favor of Equibank, all of which were personally guaranteed by the Meinhardts; as of May 1, 1980, the amount owed was $95,098.83. One of the six notes involved is a purchase money security interest in a key control unit, and the parties have stipu-

lated that none of the payments made relating to said key control unit are subject to avoidance as preferential transfers.

Equibank sought to protect the other five (5) notes by filing the necessary UCC-1's, covering accounts receivable and inventory. The parties stipulated that these financing statements, filed February 17, 1981, within ninety (90) days of the filing, constitute preferential transfers; the five notes are therefore unsecured.

Additionally, the parties agree that the law in this District holds that interest payments made within forty-five (45) days of their accrual are outside the preference parameters as well. *See, Matter of R.A. Beck Builder,* 34 B.R. 888 (Bankr.W.D.Pa. 1983), *relying* on *In re Iowa Premium Service Company, Inc.,* 695 F.2d 1109 (8th Cir.1982); 11 U.S.C. § 547(c)(2) (1979).

During the period from ninety days to one year prior to the bankruptcy filing, Debtor paid Equibank $1,379.20 on the purchase money security interest; $10,471.51 interest on the five notes, within forty-five days of accrual; and $7,992.07 toward principal on the notes.

During the ninety days prior to the filing of the bankruptcy petition, Debtor paid Equibank $517.20 toward the purchase money security interest; $2,651.70 toward interest on the notes, within forty-five days of accrual; and, $2,640.69 toward principal on the notes.

Subsequent to the filing of the petition, Debtor paid Equibank a total of $19,504.25 toward the principal and interest on the five unsecured promissory notes. Mr. Meinhardt, Debtor's president, testified that these postpetition payments were made on advice of bankruptcy counsel, and ceased on September 3, 1981, upon advice of same counsel. After payments stopped, Mr. Meinhardt testified that the Unsecured Creditors' Committee continued to question him about the postpetition payments previously made. Mr. Meinhardt further averred that in an effort to restore the Debtor to its previous post-filing position, he individually applied for, and six (6) months thereafter received, a lump sum pension fund pay-

ment. Approximately one-half (½) of this payment, $20,000.00, was used to repay the estate; the majority of the remainder was transferred to Equibank to pay down these debts, upon which the Meinhardts' were personally liable as guarantors.

## ANALYSIS

Bankruptcy Code § 547(b) is the operative provision of the trustee's avoiding powers relating to preferential transfers. That section states as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Defendants have raised questions as to two (2) of the aforementioned factors; specifically, whether the Trustee has shown that the prepetition transfers occurred while Debtor was insolvent, or that Equibank received more than it would have in a Chapter 7 liquidation.

Section 547(f) of the Bankruptcy Code states:

For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immedi-

ately preceding the date of the filing of the petition.

■ This presumption requires Defendant to come forward with some rebuttal evidence; as Defendant has not done so, the Trustee has met his burden of proof.

■ The final element of a preference is often referred to as the "greater percentage" test; when a creditor is able to obtain a greater percentage of payment on his debt than any other creditor similarly situated. *In re Windsor Communications Group, Inc.*, 63 B.R. 767 (Bankr.E.D.Pa. 1986). The standard for determining whether Defendant received more than he would have been entitled to under the Chapter 7 distribution is whether the defendant, as a general unsecured creditor, would receive less than one hundred percent (100%) recovery on its claim. *In re All American of Ashburn, Inc.*, 65 B.R. 303 (Bankr.N.D.Ga.1986); *In re Windsor Communications, supra.*

■ At the hearing on this matter, Equibank objected to this Court's taking judicial notice of the bankruptcy case as a whole, including Debtor's schedules and lists of creditors. Bankruptcy courts generally take judicial notice of the documents in a case when making the "greater percentage" analysis, usually without analyzing said decision in terms of the Federal Rules of Evidence. *See, In re Saco Local Development Corporation*, 30 B.R. 862 (Bankr. D.Me.1983), and cases cited therein.

We conclude that it is appropriate to take judicial notice of Debtor's bankruptcy case as a whole, including Debtor's schedules and lists of creditors. In doing so, we adopt the following rationale of the *Saco* court:

A bankruptcy case is unique because it is composed of many individual parts. Within the debtor's case itself, the bankruptcy judge considers many matters which affect the amount of the dividend to unsecured creditors, ... It would be impossible for bankruptcy judges to ignore all the other decisions they have made in a bankruptcy case and related

proceedings when deciding the matter before them.

In addition, bankruptcy judges would be remiss if they did not take this information into consideration. Bankruptcy judges may be the only individuals involved in a bankruptcy case with an overall view of the case.

*In re Saco Local Development Corporation, supra* at 865.

When Debtor filed bankruptcy in May of 1981, schedules were filed, along with a sworn declaration that these schedules of assets and liabilities were true and correct. Debtor listed assets of $194,740.59 and liabilities of $282,748.55. It is clear, therefore, that on the date of filing, unsecured creditors could not possibly have received a 100% distribution on their claims. Thus, the Trustee has met his burden of proof as to the preferential nature of the transfer involved. Having so established the preferential transfer, Equibank has been preferred, in that during the ninety days prior to the filing of bankruptcy, it received $2,640.69 as payments accredited to principal on the five unsecured promissory notes. Those transfers, as they relate to said monies paid on principal, are therefore avoided as preferential transfers under § 547(b) of the Bankruptcy Code.

■ We turn next to the Trustee's allegation that Debtor engaged in fraudulent conveyances pursuant to Pennsylvania law, and that such sums should be recoverable by the Trustee pursuant to his avoiding powers under § 544(b) of the Code. The Trustee brings this action pursuant to Pennsylvania's Fraudulent Conveyance Act, 39 P.S. § 351 et seq. (Purdon's). Specifically, under §§ 354 and 357 of said title, the Trustee alleges that Debtor conveyed $19,504.25 to Equibank with the intent to defraud other present and/or future creditors; alternatively he argues that said conveyance is fraudulent with or without actual intent, due to a lack of fair consideration in return for said sum.

Section 357 states in pertinent part:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law,

to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

The requirement of actual intent may be established by circumstantial evidence. *See, Continental v. Marcus,* 242 Pa.Super. 371, 363 A.2d 1318 (1976). However, said evidence must be clear and convincing in order for the trustee to prevail. *See, U.S. v. Gleneagles Investment Company, Inc.,* 565 F.Supp. 556 (M.D.Pa.1983). In the case at bar, Mr. Meinhardt testified that from the time of the filing of the bankruptcy petition, he was advised by counsel to continue the payments on the various promissory notes to Equibank. At the First Meeting of Creditors held August 28, 1981, almost four (4) months after the filing of the bankruptcy petition, counsel to the Unsecured Creditors' Committee questioned Debtor as to the propriety of the payments made postpetition. Mr. Meinhardt testified that after the meeting, his counsel advised him to continue making the payments until advised otherwise; five (5) days later, Mr. Meinhardt received a letter from his counsel advising that the payments should cease, and at that point he stopped making the payments.

It is clear to this Court, that at all times up until the First Meeting of Creditors, Mr. Meinhardt was operating under the belief that the payments to be made to Equibank were in some manner different from the payments to be made to other creditors, *inter alia,* that these payments were to be made on a secured debt. We find no evidence that Mr. Meinhardt, through Debtor Meinhardt Mechanical Service, actually intended to hinder, delay or defraud any present or future creditors when he made the various payments postpetition to Equibank.

Section 354 of the Act states in pertinent part:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

Section 353 defines "fair consideration" as follows:

Fair consideration is given for property or obligation;

(a) When, in exchange for such property or obligation, as a fair equivalent therefore and in good faith, property is conveyed or an antecedent debt is satisfied; or

(b) When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained.

The attorneys have raised an issue which in this case appears to be a distinction without a difference: whether the Debtor and the debtor-in-possession are the same entity or are separate and distinct entities. Trustee argues that as the parties are separate and distinct entities, postpetition payments made by the debtor-in-possession on prepetition debts owed by Debtor do not constitute fair consideration. Defendants argue, however, that the debtor-in-possession and the prepetition Debtor are one and the same party, and that any postpetition payments made by the debtor-in-possession on debts incurred prepetition do constitute fair consideration for reduction of an antecedent debt. This Court abstains from making a decision on that issue because the facts in the instant case do not warrant same.

The testimony at trial offered by Mr. Meinhardt showed that in September of 1981, he applied for a lump sum retirement benefit due him through his union retirement plan. The plan required a 6–month waiting period between application and receipt. On April 7, 1982, Mr. Meinhardt received $48,507.00 from the union retirement plan, which was deposited in a new and separate account. On that same date, Mr. Meinhardt gave a check to Debtor in the amount of $15,000.00; thereafter, on April 26, 1981, Mr. Meinhardt prepared and delivered a second check to Debtor in the amount of $5,000.00. Mr. Meinhardt testified that he made these payments intending to make the estate whole; he wanted the corporation to "go down clean". He took no security interest; he received no value; he has not been and will not be repaid. Clearly then, the estate has been made whole for the monies paid out postpetition; no further cause of action on this count is present.

An appropriate Order will be issued.

### ORDER OF COURT

AND NOW at Pittsburgh in said District this 22nd day of April, 1987, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that:

1) Trustee's claim against William H. and Josephine Meinhardt, in the amount of $7,992.07, is SETTLED, as per Trustee's request and recommendation, for the sum of $1,000.00;

2) Trustee's claim against Equibank, in the amount of $2,640.69, is GRANTED; and

3) Trustee's claim against William H. and Josephine Meinhardt, in the amount of $19,504.25 is DISMISSED, as Debtor has been made whole.